UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MICHELLE R. TARBUSH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 09 C 3400 |
| v. ) | |
| ) | Judge John W. Darrah |
| MICHAEL J. ASTRUE, Commissioner of ) | |
| Social Security, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Michelle Tarbush, brought suit against Defendant, Michael Astrue, Commissioner of Social Security, seeking review of denial of benefits. Before the Court are the parties' cross motions for summary judgment.

## BACKGROUND

Plaintiff, who was born on July 14, 1978, has been diagnosed with mild mental retardation and depression. Plaintiff filed an application for Supplemental Security Income Benefits and Disability Insurance Benefits on September 17, 2004. Her claims were denied, initially on April 19, 2005, and again, upon reconsideration, on February 26, 2007. Plaintiff requested a hearing before an ALJ, which was held on September 18, 2008. The ALJ issued his written opinion, denying benefits on October 1, 2008.

## LEGAL STANDARD

The findings of the Commissioner should be reversed only if it is not supported by substantial evidence or if it results from an error of law. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003) (*Lopez*). "Substantial evidence" means "such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion." *Micus v. Bowen*, 979 F.2d 602, 604 (7th Cir. 1992). A reviewing court must conduct a "critical review of the evidence" but must not reweigh the evidence or substitute its own judgment for that of the Commissioner. *Lopez*, 336 F.3d at 539. The Commissioner's decision "cannot stand if it lacks evidentiary support or an adequate discussion of the issues." *Lopez*, 336 F.3d at 539.

## ANALYSIS

The determination of whether a claimant suffers from a disability as defined in the Social Security Act is conducted through a five-step inquiry, evaluated in sequence: (1) whether the claimant is engaged in substantial gainful activity, i.e. is employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the Commissioner as conclusively disabling (*see* 20 C.F.R. § 404, Subpt. P, App.); (4) whether the claimant can perform his past work; and (5) whether the claimant is capable of performing work in the national economy. 20 C.F.R. § 404.1520; *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995). The claimant has the burden of proof for steps one through four; the Commissioner has the burden of proof for step five. *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000) (*Clifford*).

The ALJ essentially bypassed step one, noting that although Plaintiff had worked since the alleged onset date of her disability, because the ALJ denied her claim on other grounds, it was unnecessary to determine if that work qualified as substantial gainful activity. At steps two and three, the ALJ found that Plaintiff suffered from severe mental impairments but that those impairments did not meet or equal a listed impairment. At step four, the ALJ found that Plaintiff could not perform her past work as a part-time bagger at Dominick's. However, at step five,

2

because Plaintif could perform a full range of light work provided that it was simple, routine and repetitive, the ALJ found that jobs existed in significant numbers in the national economy that Plaintiff could perform. The ALJ therefore found that Plaintiff was not under a disability as defined by the Social Security Act.

*Listing 12.05*

Plaintiff first argues that the ALJ erred in concluding that Plaintiff's impairment does not meet or exceed one of the listed impairments. Specifically, Plaintiff argues that she offered significant evidence that she satisfied the criteria for Listing 12.05, which applies to mental retardation, and that the ALJ erred by failing to logically connect the evidence to his conclusion that this listing was not met. Listing 12.05 defines mental retardation as "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22." 20 C.F.R. Pt. 404, Subpart P, App. 1 § 1205. The required level of severity for the listing can be met in any of four ways. *Id.* Plaintiff argues that she qualifies under either paragraph C, which requires "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function"; or under paragraph D, which requires a valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the following: (1) marked restriction of activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation, each of extended duration. *Id.*

3

With respect to the requirements of paragraph C, the ALJ stated "they are not met because [Plaintiff] does not have a valid verbal, performance of full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." With respect to the requirements of paragraph D, in addition to not having a sufficiently low IQ score, the ALJ found that Plaintiff had not experienced any episodes of decompensation and that her restrictions and difficulties with respect to the other elements of paragraph D were not severe enough to qualify. The ALJ found that Plaintiff had only mild restriction of activities of daily living and moderate difficulties in maintaining social functioning and in maintaining concentration, persistence, or pace.

Plaintiff challenges each of these conclusions. Plaintiff first argues that her IQ scores meet the requirements of paragraphs C and D. In 1994, Plaintiff's scores on an IQ test ranged from 55-60. On tests taken in 2005, 2007 and 2008, Plaintiff's low scores were 69, 67 and 64, respectively.[1] However, in 1997, Plaintiff demonstrated verbal and full scale IQ scores of 81 and a performance IQ score of 84.

The ALJ's fullest discussion of Plaintiff's IQ scores was his consideration of whether Plainitff met the severity requirements of paragraph B of 12.05.[2] While noting Plaintiff's low scores from the 1994 test and calling those scores valid, the ALJ found that the 1997 IQ scores showed "vast improvement" and that Plaintiff, therefore, did not meet the paragraph B criteria.

---

[1]The type of IQ test taken by Plaintiff results in three different scores: verbal, performance and full-scale IQ scores. Section 12.00 provides that the *lowest* of these scores is used in conjunction with 12.05. 20 C.F.R. Pt. 404, Subpart P, App. 1 § 1200.

[2]Under paragraph B, an IQ score of 59 or less is sufficient, by itself, to meet the severity requirement of 12.05.

The ALJ noted that it is impossible to fake a higher IQ score and that, therefore, the 1997 tests, resulting in scores of 81 and 84, were valid. With respect to the IQ score requirement of paragraph C, the ALJ merely stated that Plaintiff "does not have a valid verbal, performance, or full scale IQ of 60 through 70."

The ALJ erred by failing to adequately explain his reasoning with respect to Plaintiff's IQ scores. Plaintiff tested within the range of severely low IQ scores set out in paragraph C three times between 2005 and 2008, after the 1997 test scores relied upon by the ALJ. The ALJ's decision does not mention these tests. One could presume, based on the ALJ's statement that Plaintiff did not "have a valid verbal, performance, or full scale IQ of 60 through 70" that the ALJ found that these scores were invalid. One might further speculate, based on the ALJ's comment that a higher IQ score is impossible to fake, that the ALJ believed Plaintiff had faked her low scores on the three most recent tests. All of this is speculation, however, as the ALJ's decision does not specifically mention the IQ test results from 2005 through 2008. Thus, it is impossible to determine whether the ALJ overlooked the later test scores, considered them invalid, or chose not to consider them for some other reason. Therefore, the Court finds that the ALJ's decision with respect to this point is not supported by an adequate discussion of the issues.

Plaintiff next argues that the ALJ erred in concluding that she did not satisfy the second requirement of paragraph C, "a physical or other mental impairment imposing an additional and significant work-related limitation of function." Plaintiff argues that she suffers from depression, anxiety disorder and attention deficit disorder, all of which would satisfy this requirement of an additional limitation. From the ALJ's decision, it is unclear whether he considered this second requirement of paragraph C or chose not to perform the analysis because he had determined there

was no valid IQ score between 60 and 70. In either case, analysis as to why the requirement is not met is lacking, amounting to error by the ALJ.

Finally, Plaintiff argues that she meets the requirements of paragraph D because she has both the requisite low IQ score and meets at least two of the four criteria listed above. The ALJ found that she met none of the four criteria. Specifically, the ALJ found that Plaintiff had mild restriction, rather than marked restriction, in activities of daily living and that Plaintiff had moderate difficulties, rather than marked difficulties, both in social functioning and with regard to concentration, persistence and pace. Plaintiff argues that she has marked limitations in all of these areas.[3]

In support of her contention, Plaintiff cites the reports her treating psychologist, Dr. Woods, and a consultive examining psychologist, Dr. Small. Dr. Woods indicated that Plaintiff had marked limitations in six of eight areas related to the ability to maintain concentration and persistence. These included marked restrictions in "the ability to carry out detailed instructions," "the ability to sustain an ordinary routine without special supervision," "the ability to make simple work-related decisions," and "the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace [without] an unreasonable number or length of rest periods." Dr. Woods also indicated that Plaintiff had marked limitation in certain areas of social interaction, including "the ability to interact appropriately with the general public" and "the ability to request instructions and respond appropriately to criticism from supervisors." Finally,

---

[3]The ALJ also concluded that Plaintiff had not experienced any episodes of decompensation, the fourth criterion. Plaintiff does not contest this finding.

with respect to "Adaptation," Dr. Woods found that Plaintiff had marked limitations in three of four categories, including "the ability to be aware of normal hazards and take appropriate precautions" and "the ability to travel in unfamiliar places or use public transportation." Dr. Small's report reached similar conclusions to Dr. Woods, concluding that Plaintiff had marked limitations in maintaining social functioning and in maintaining concentration, persistence and pace.

The ALJ did not specifically address the contents or conclusions in the reports of Dr. Woods or Dr. Small in finding that Plaintiff had not met the requirements of 12.05, paragraph D. However, later in his opinion, in determining Plaintiff's residual functioning capacity ("RFC"), the ALJ explained that he could not give significant weight to either report and that, instead, he would give more weight to the report of Dr. Rosenthal, the medical examiner. Dr. Rosenthal rated Plaintiff's abilities higher than had Dr. Woods and Dr. Small. According to Dr. Rosenthal, Plaintiff was able to handle routine tasks, was independent though immature, and should be able to interact with customers.

Deciding on the weight to give these three medical opinions, the ALJ stated that Dr. Rosenthal "did a very thorough job of evaluating the medical evidence of record" and noted that Dr. Rosenthal "had the opportunity to personally question the claimant." However, the ALJ decided not to give significant weight to Dr. Small's report, stating "it is difficult to understand why the physician imposed such severe limitations on [Plaintiff]." The ALJ likewise decided not to give significant weight to the report of Dr. Woods, stating "[w]hile the limitations are extreme, the medical evidence to support such limitations is not found in the file." In addition to these three medical opinions, the ALJ also considered Plaintiff's demeanor, stating the Plaintiff

7

"demonstrated a fair amount of intelligence during the hearing," and Plaintiff's past work at Dominick's during which, the ALJ noted, Plaintiff received "not one single accommodation because of a mental disorder or learning disability." This last factor, the ALJ noted, "further reinforces the testimony of the medical expert," Dr. Rosenthal.

A review of the ALJ's opinion reveals both factual and legal error. Because the ALJ did not give controlling weight to the opinion of the treating physician, Dr. Woods, the ALJ was required to consider "the length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinion." *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009) (citing 20 C.F.R. § 404.1527(d)(2)). Here, the ALJ did not perform that analysis. Rather, his reasons for preferring Dr. Rosenthal's opinion to the opinions of Dr. Woods and Dr. Small were that Dr. Rosenthal did a thorough job in forming her opinion and had the opportunity to personally question Plaintiff. This statement is so general as to be unreviewable by this Court and does not alone support a preference for Dr. Rosenthal's opinions over those of Plaintiff's treating psychologist.

Furthermore, the reasons given for disregarding the reports of Doctors Small and Woods were insufficient. With respect to Dr. Woods, the ALJ merely stated, without elaboration, that the medical evidence to support the limitations were not found in the file. With respect to Dr. Small, the ALJ cited some positive statements in the report regarding Plaintiff's abilities and concluded that he could not understand why such severe limitations were imposed. However, the cited statements, while perhaps sounding impressive due to the medical jargon used, essentially amount to conclusion that Plaintiff could speak English, knew where she was during the

8

examination and had some functioning memory. The ALJ does not explain how these findings were inconsistent with the limitations in Dr. Small's report.

Finally, it appears that the ALJ improperly allowed two other factors to affect his weighing of the medical opinions. First, the ALJ considered his own observations of Plaintiff as demonstrating "a fair amount of intelligence" at the hearing. *See Barger v. Astrue*, 2009 WL 807587, at *2 (S.D. Ind. March 25, 2009) (remanding, in part, because the ALJ's decision was based upon his own assessment of the claimant's intelligence). Second, the ALJ erroneously stated that Plaintiff worked as a bagger at Dominick's without a single accommodation. This assertion is contrary to the evidence, which showed that Plaintiff received several accommodations at that job: Plaintiff worked for a relative, was allowed to work at a lower standard of productivity, got extra help with her job, was transported to and from work and received assistance in getting ready for work. The ALJ's opinion indicates that his mistaken belief regarding Plaintiff's past work may have caused him to give more weight to Dr. Rosenthal's higher opinion of Plaintiff's abilities.

Defendant does not attempt to defend the ALJ's reasoning with respect to 12.05. Rather Defendant cites case law from the Eleventh Circuit, *Popp v. Hecker*, 779 F.2d 1497, 1500 (11th Cir. 1986) (*Popp*), for the proposition that an ALJ's findings regarding a claimant's "adaptive functioning" may outweigh the results of an IQ test in determining whether Listing 12.05 is met. Defendant's citation to *Popp* is puzzling; that case held that an ALJ was permitted to disregard IQ scores that were found to be not credible. *Popp*, 779 at 1500. The case dealt with a claimant who was found to be consistently exaggerating the severity of his disability. *Id.* However, like the ALJ, Defendant does not actually argue that Plaintiff intentionally attempted to

9

obtain low IQ scores on any of her tests. Rather, Defendant cites *Popp* for the proposition that Listing 12.05, in addition to the requirements of paragraphs A through D, requires a showing of "deficits in adaptive functioning." The Court does not concur with Defendant's reading of Listing 12.05. The listing states "Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period." It continues, "The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied." Thus, contrary to Defendant's position, a deficit in adaptive functioning is not an additional requirement beyond those set out in paragraphs A through D. Rather, it is by meeting the requirements of any of those paragraphs that such a deficit may be shown. Furthermore, even if Defendant's view of Listing 12.05 were correct, the ALJ's decision could not be upheld on that basis since the ALJ did not rely on it. *See Golembiewski v. Barnhart*, 322 F.3d 912 (7th Cir. 2003) ("general principles of administrative law preclude the Commissioner's lawyers from advancing grounds in support of the agency's decision that were not given by the ALJ").

For the foregoing reasons, the case must be remanded for a redetermination of whether Plaintiff meets the requirements of Listing 12.05.

### Questions to Vocational Expert

Plaintiff argues that the ALJ erred in formulating his hypothetical questions to the vocational expert ("VE"). Specifically, Plaintiff argues that the ALJ's questions, which limited Plaintiff to "simple, routine, and predictable jobs," did not account for Plaintiff's limitations in concentration, persistence, or pace, which the ALJ had found to be moderate. In *Stewart v. Astrue*, 561 F.3d 679, 684-85 (7th Cir. 2009) (*Stewart*), the court held that question to a VE that

10

limited a claimant to "simple, routine tasks" did not adequately account for the claimant's limitations in "concentration, persistence, and pace." *Id.* This cases fall squarely within the holding of *Stewart*.

Defendant attempts to defend the ALJ's question to the VE on the grounds that the ALJ's hypothetical limiting Plaintiff to simple, routine and predictable jobs was supported by medical evidence. But this argument misses the point. The import of *Stewart* is that questions limiting an individual to simple, routine work do not fully describe the individual's limitations if he is also limited in concentration, persistence and pace. To say that Plaintiff can do a simple and routine job is not necessarily to say they she has the concentration or persistence to do it for a sustained period at an acceptable pace. This is true even if the medical evidence demonstrates that Plaintiff can perform simple, routine and predictable jobs. Here, the ALJ determined that Plaintiff had a moderate limitation in concentration, persistence and pace. Defendant has not argued that this limitation was included in the hypothetical questions to the VE. Therefore, the case must be remanded for further consideration of the issue.[4]

## Past Work Experience

Finally, the parties dispute whether the ALJ's factual error, that Plaintiff's work at Dominick's was without any accommodation, warrants remand of the case. The error is closely related to the grounds for remand discussed above. As noted the ALJ's error with respect to Plaintiff's previous work may have affected his weighing of the medical testimony. Further, the

---

[4] Plaintiff made the further argument in her opening brief that, while the ALJ limited Plaintiff to simple jobs, the jobs suggested by the VE were not simple. However, following Defendant's response, in which Defendant contradicted Plaintiff's assertion that a housekeeping job was not a simple job, Plaintiff has dropped the argument in her reply. Therefore, the Court considers Plaintiff to have conceded the argument.

11

error may have affected his formulation of Plaintiff's RFC, leading to incomplete hypothetical questions being asked of the VE. Thus, it is unnecessary to decide whether this error standing alone warrants remand.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment is granted; Defendant's motion for summary judgment is denied. The ALJ's decision is reversed, and the case is remanded for proceedings consistent with this opinion.

Dated: 2-2-10

JOHN W. DARRAH
United States District Court Judge